[No. H006691. Sixth Dist. Nov. 29, 1990.]

NICHOLAS J. BARISICH, Plaintiff and Respondent, v.
BENJAMIN EARL LEWIS, Defendant and Appellant.

14

COUNSEL

Thomas Easton for Defendant and Appellant.

Tone & Tone and Francine R. Adkins Tone for Plaintiff and Respondent.

OPINION

**COTTLE, J.**—In this quiet title action, the trial court granted plaintiff's motion for summary judgment. Defendant appeals, claiming that triable issues of fact exist as to whether the prior owner of the property transferred it to plaintiff to defraud his creditors. For reasons we shall explain, we affirm.

### STANDARD OF REVIEW AND BURDEN OF PROOF

Preliminarily, we wish to clear up certain misconceptions about the summary judgment procedure evidenced by the parties in their briefs on appeal.

According to plaintiff, the applicable rules are (1) the reviewing court must independently review the evidence, (2) it must defer to the sound

discretion of the trial court in its ruling on the summary judgment motion, absent a clear showing of abuse of discretion,[1] and (3) when an affirmative defense is pled, the defendant has the burden of proving his defense even in cases where, as here, the plaintiff is the party moving for summary judgment. Defendant does not dispute any of these rules. As we shall explain, however, only the first rule is correct: on appeal, we independently review the evidence. The other rules are incorrect.

■ As we stated in *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061 [225 Cal.Rptr. 203], "a summary judgment motion raises only questions of law [which relate to] the construction and effect of the supporting and opposing papers . . . ." (*Id.*, at p. 1064.) Because there are no issues of fact which are decided on a summary judgment motion, there are no factual determinations for us to defer to, absent an abuse of discretion. Accordingly, we *independently* review the evidence, "applying the same three-step analysis required of the trial court." (*Ibid.*) "First, we identify the issues framed by the pleadings [i.e., the complaint *and* answer]," since the motion and opposition must be addressed to these issues. (*Ibid.*) "Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor . . . . A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial. [Citations.]" (*Id.*, at pp. 1064-1065.) Thus, *the moving party must "show* by affidavits that he is entitled to judgment on the issues raised by his pleading and *that the defenses thereto alleged by his opponent are sham and do not raise an issuable defense,* and until [he] makes such a showing his opponent need not be put to a test on his affidavits, if any." (*Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 120 [44 Cal.Rptr. 268], italics added; but see *Best* v. *Burch* (1955) 132 Cal.App.2d 859, 862 [283 P.2d 262]; *University of So. Cal.* v. *Weiss* (1962) 208 Cal.App.2d 759, 771 [25 Cal.Rptr. 475].)

---

[1] The genesis of this oft-cited but incorrect rule is the 1957 opinion, *Hicks* v. *Bridges* (1957) 152 Cal. App.2d 146, 148 [313 P.2d 15]. In *Hicks* the court declared, without citation to any authority, that a motion for summary judgment "is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse thereof, the exercise of that discretion will not be disturbed on appeal." (*Ibid.*) After making this statement, the court went on to reiterate the usual rules for ruling on a summary judgement motion, i.e., that the point of the motion if to determine whether a triable issue of material fact exists, that the motion must be supported by affidavit of a person or persons having knowledge of the facts and that an affidavit in opposition does not raise triable issues unless it sets forth facts showing that the party has a good and substatial defense or that a good cause of action exists on the merits. For these latter propostions, the *Hicks* court cited numerous authorities including Code of Civil Procedure section 437c. And applying these latter rules, the *Hicks* court reversed the grant of summary judgement, determining as a matter of law that the affidavits in support of the motion were insufficient. Thus, the court did not defer to the trial court as it erroneously suggested in its unfounded introductory comment. Rather, the court independently examined the evidence to determine whether it revealed the existence of a triable, material fact.

Only when the moving party makes a prima facie showing justifying a judgment do we look to "the third and final step . . . to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*AARTS Productions, Inc.* v. *Crocker National Bank, supra,* 179 Cal.App.3d at p. 1065.)

## DISCUSSION

We now apply this three-step analysis to the instant case. In his complaint, plaintiff sought to quiet title to a one-quarter interest in real property located in Santa Cruz County.[2] Plaintiff claimed he acquired his fee simple title to the property by quitclaim deed in 1982 but failed to record the deed until 1985. In the interim, defendant's predecessor in interest and another judgment creditor[3] recorded abstracts of judgment against the prior owner. Plaintiff claimed the abstracts of judgment did not create liens on the property because the prior owner no longer held any interest in the property when the abstracts were recorded.

In his answer, defendant alleged as an affirmative defense that the 1982 deed was a conveyance in fraud of creditors and therefore invalid.

The issues presented by these pleadings are: first, whether as a legal principle it is true that a judgment lienor's interest in real property is subject to prior unrecorded conveyances of the same real property (defendant apparently concedes that it is),[4] and second, whether the transfer of the property to plaintiff by the prior owner was a conveyance in fraud of creditors.

Plaintiff, as the moving party, not only has the burden of proving his claim but also of disproving defendant's defense. In support of this burden, plaintiff submitted the following evidence: his own declaration to which he attached 76 pages of documentation, his complaint, defendant's answer, his first and second sets of interrogatories to defendant, and defendant's answers thereto.

In the declaration, plaintiff states that he and his wife are high school teachers and were friends of fellow teacher Janet Bennett. Plaintiff met the

---

[2] Plaintiff originally also sought damages for slander of title. He dismissed that cause of action, however, prior to the entry of final judgment. The issues raised in that cause of action will therefore not be discussed.

[3] The other judgment creditor, defendant Edmund Notley, has not appealed from the judgment. All further references to "defendant" refer only to defendant Benjamin Earl Lewis.

[4] In his points and authorities in opposition to summary judgment, defendant states: "This suit to quiet title appears on the face to be fully justifiable. If all the declaration of plaintiff BARISICH was accepted as true and if all the documents attached as exhibits were accepted at face value, this motion for summary judgment ought to be granted."

prior owner of the subject property, an attorney named Albin Danell, in 1978 when Danell began dating their friend Bennett. Later Danell and Bennett married and invited plaintiff and his wife to visit them at their vacation home in Santa Cruz County. Danell and three other couples each held one-quarter interests in the beach property. The four owners shared expenses and alternated weeks when each could use the property.

In 1979, Danell asked plaintiff if plaintiff could lend him $15,000, which plaintiff agreed to do. Danell prepared a promissory note in the face amount of $16,000 at 10 percent interest and due in one year, and a deed of trust to assure repayment. He told plaintiff that he need not record the deed of trust, which was dated and notarized on January 24, 1979. Copies of plaintiff's cashier's check to Danell, the note, and the deed are attached as exhibits to plaintiff's declaration.

A couple of months later, one of the other owners[5] decided to sell his one-quarter interest in the vacation home, and because plaintiff and his wife "loved visiting the beach," they decided to buy it. A grant deed was prepared, signed and notarized on June 6, 1979, but it also was not recorded.

The following year, when Danell's note became due, he was unable to pay it back. Plaintiff did not worry at first because Danell kept assuring him that he would be able to repay the loan plus interest. By March 1982, however, Danell's marriage had broken up and the debt, including interest, had accrued to over $21,000. Danell admitted he couldn't pay and suggested to plaintiff that his remedy was to foreclose; however, "to save [plaintiff] the trouble," he would give plaintiff a quitclaim deed in lieu of foreclosure. The deed was signed, notarized, and delivered to plaintiff on March 15, 1982.

As a consequence of getting a second one-quarter interest, plaintiff now had to pay the prorated expenses (mortgage, homeowner's association dues, utilities, cable television fees, repair costs) for two shares. He stated he "was '. . . spooked' by this adventure into the investment world" so he decided to sell both interests. He listed them for sale in April 1982 for $82,500, or $41,250 apiece. However, neither interest sold. Over the next three years, plaintiff listed the property with various realtors but received only one offer in March 1984—for $15,000, well below the property's value. Plaintiff appended as exhibits to his declaration various real estate listing agreements, newspaper advertisements, written communications between himself and the realtors, and a copy of the March 1984 offer. After making double payments for six months, plaintiff agreed to allow Danell to use the vacation

---

[5]Although irrelevant to the issues raised in plaintiff's complaint, the other owner happened to be defendant Benjamin Earl Lewis.

home until it sold contingent upon Danell making one of the monthly payments. Danell did so from October 1982 until February 1985.

In 1985, plaintiff finally found a buyer, his wife's cousin's husband, who agreed to purchase the one-quarter interest plaintiff received from Danell for $30,000. To consummate that sale, plaintiff obtained a preliminary title report which showed: (1) Danell listed as owner of record (because plaintiff had not recorded his quitclaim deed); (2) two liens from the Internal Revenue Service (IRS) for past taxes Danell owed totalling $59,000, recorded March 9, 1984; (3) an abstract of judgment against Danell and in favor of defendant's predecessor in interest, recorded July 20, 1984; and (4) an abstract of judgment against Danell in favor of two attorneys, recorded February 11, 1985.

Faced with these clouds on title, plaintiff decided to sell the one-quarter interest he purchased rather than the one-quarter interest he received from Danell. On advice of counsel, he recorded the deed of trust Danell had prepared and also the grant deed on the purchased interest. Escrow closed April 10, 1985.

Later, plaintiff sought new counsel who told him to record his quitclaim deed. Counsel contacted the IRS and Danell's judgment creditors to explain that Danell deeded the property to plaintiff in 1982, before their liens were recorded. Subsequently, the IRS and the two attorney judgment creditors voluntarily removed their liens from the record. Defendant, however, refused to do so.

When plaintiff recorded his quitclaim deed, he discovered that another judgment creditor of Danell's, nonappealing defendant Notley, had recorded a lien. Plaintiff attached as exhibits to his declaration the title reports and copies of the releases from the IRS and the attorney creditors.

Plaintiff also submitted copies of the two sets of interrogatories he sent to defendant, and defendant's answers. One question asked defendant to "[i]dentify each . . . affirmative defense in your pleadings and for each: [¶] (a) state all facts upon which you base the . . . affirmative defense; [¶] (b) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; [¶] (c) identify all DOCUMENTS and other tangible things which support your . . . affirmative defense . . . ." Defendant's answer was "Attorney Albin Danell and his bankruptcy petition, Chap. 11, filed about Sept. 18, 1987, Case No. 587-04809, Northern District for California, San Jose." Plaintiff followed up with additional interrogatories asking defendant to "State the name, address, and telephone number of each individual: [¶] (a) Who is a witness to any fact which you contend is

relevant to a determination of the nature of the Deed from Albin E. Danell to Nicholas Barisich dated 3/15/82 which Deed is Exhibit "B" to the Complaint in this action. [¶] (b) Who has made any statement regarding such Deed; [¶] (c) Who heard any statement made about such Deed; [¶] (d) Who you or anyone acting on your behalf claims has knowledge regarding the nature of such Deed" and whether defendant had interviewed anyone concerning the nature of the deed. Defendant responded, "I do not know of any witnesses. [¶] . . . Neither I nor anyone on my behalf have interviewed anyone concerning the deed from Danell to Barisich."

Thus, plaintiff put forward evidence (defendant's answers to interrogatories) that the *only* evidence defendant had to support his theory that Danell conveyed the property to plaintiff in fraud of creditors was Danell's bankruptcy petition, filed September 18, 1987. In that petition, Danell claimed on a schedule listing creditors holding security that he owed $38,000 to El Camino Savings and Loan, which loan was secured by the subject property. He listed the market value of his "1/4 interest is [$]50,000."

Before we examine defendant's evidence, we must first determine whether plaintiff's evidence establishes facts which prima facie (1) justify a judgment in plaintiff's favor and (2) negate defendant's affirmative defense.

With respect to plaintiff's initial burden, we note, as defendant admits and as the IRS and the other judgment creditors obviously acknowledged in voluntarily releasing their liens, that if Danell lawfully granted all of his interest in the property to plaintiff before the abstracts of judgment were recorded, then no liens would attach. " 'The law is well settled that the lien of a judgment does not attach to a naked title, but only to the judgment debtor's interest in the real estate; and if he has no interest, though possessing the naked title, then no lien attaches. [Citation.] Thus a creditor who attaches property for his debt obtains a lien only upon the title or interest which the debtor has in the property at the time of the levy, and if at that time all title and interest has [*sic*] passed from him to a third person, the creditor gets nothing by the levy. [Citation.]' " (*Spear* v. *Farwell* (1935) 5 Cal.App.2d 111, 114 [42 P.2d 391].) We agree that plaintiff has made a prima facie showing justifying judgment.

The next question is whether plaintiff has negated defendant's affirmative defense. In order to prove that a transfer of property is fraudulent as to a creditor within the meaning of the Uniform Fraudulent Transfer Act (Civ. Code, § 3439 et seq.), a party must prove that the debtor made the transfer either "(a) With actual intent to hinder, delay, or defraud any creditor of the debtor" or "(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: [¶] (1) Was

engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or [¶] (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." (Civ. Code, § 3439.04.)

Although under subdivision (a) of Civil Code section 3439.04, a transfer made with actual intent to hinder, delay or defraud a creditor is fraudulent, such a transfer is not voidable against "a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee . . . ." (Civ. Code, § 3439.08, subd. (a).) Accordingly, plaintiff must show (1) he took the property in good faith and (2) Danell received a reasonably equivalent value in exchange for the transfer in order to effectively negate defendant's affirmative defense that the transfer was a conveyance in fraud of creditors.

With respect to plaintiff's acquiring the property in good faith, plaintiff stated in his declaration that he loaned Danell $15,000 in 1979, that the repayment was due in 1980, that in 1982 Danell transferred the interest in lieu of foreclosure and in exchange for a debt then valued at over $21,000, that he sold a one-quarter interest in 1985 for $30,000 "which was about $5,000 more than the $25,000 which would have been due from Danell if the loan still existed," that plaintiff "did not offer or pay to Danell any of the excess and [Danell] did not ask for it," that "[t]here was never any thought that [Danell] had any right or interest in [plaintiff's] sale," and that plaintiff "[has] never talked to Mr. Danell since."

With respect to whether Danell "receiv[ed] a reasonably equivalent value in exchange for the transfer," the evidence is undisputed that he did. Plaintiff produced evidence (the promissory note) unequivocally establishing that Danell owed him over $21,000 when Danell delivered the quitclaim deed to him in lieu of foreclosure. This is highly comparable to the figure defendant claims plaintiff purchased his own one-quarter interest for in 1979, i.e., $20,000. Additionally, plaintiff submitted evidence that he received an offer to buy a one-quarter interest on March 13, 1984, for only $15,000. When the property finally sold in 1985, three and a half years after plaintiff received the quitclaim deed, the selling price was $30,000. This showing negates defendant's affirmative defense.

█ We therefore move to the third and final step to see whether defendant has demonstrated the existence of a material, triable issue of fact. In opposition to plaintiff's motion, defendant introduced only two items of evidence: his own two-page declaration and a certified copy of a schedule from Danell's September 18, 1987, bankruptcy petition in which Danell

claimed to owe $38,000 to the mortgage lender of the vacation home and in which he claimed that the market value of his one-quarter interest was $50,000.

In the declaration, defendant states in paragraph 2 that *in connection with the sale of his one-quarter interest to plaintiff in 1979*, he did not tell plaintiff that he did not have to record the deed. This evidence may have relevance regarding plaintiff's credibility but is unrelated to the issues in this action, however, which concern quieting title to the one-quarter interest plaintiff received from Danell. Defendant goes on to speculate as to why someone might not record a deed. It is well established, however, that a declaration as to someone else's intent is merely opinion or conclusion and is insufficient to create a triable issue of fact as to such party's intent. (*Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130, 1136-1137 [213 Cal.Rptr. 750].)

In paragraph 3, defendant states that he does not believe plaintiff's self-serving statements of his lack of sophistication in real estate matters. Plaintiff's lack of sophistication is not in issue, however; the various interests in the property and the dates each was created are in issue.

In paragraph 4, defendant states that he does not understand plaintiff's interest calculations, but he offers no alternative calculations. Had defendant offered other calculations *and* had the trial court determined that the 1982 transfer was invalid and, therefore, that plaintiff was entitled to repayment of his loan *plus interest*, then this would have created a triable issue of fact. (In plaintiff's alternative motion for summary adjudication of issues, he sought to establish the amount due under the promissory note in the event the court held the transfer improper.) In view of the finding that the transfer was valid, however, even plaintiff's interest calculations are not material issues of fact.

In paragraph 5, defendant refers to the bankruptcy schedule. The only inference that may be drawn from this evidence, however, is that eight years and nine months after Danell executed his note and deed of trust, and five years and six months after he delivered the quitclaim deed to plaintiff in lieu of foreclosure, Danell became insolvent and sought the protection of the bankruptcy court. His statement on the "Creditors Holding Security" schedule that the market value of his one-quarter interest was $50,000 fails to negate the quitclaim deed he signed, had notarized, and delivered to plaintiff five and one-half years earlier. Moreover, Danell's statement does not create a triable issue of fact on the issue whether he transferred the property in fraud of creditors because, as noted above, it is undisputed that plaintiff took the property in good faith and for a "reasonably equivalent value."

In the final paragraph, defendant speculates that Danell's bankruptcy schedule, allegedly claiming an ownership interest in the property, gives rise to a legitimate inference of wrongdoing and collusion. Opinions or conclusions such as these, however, are not sufficient to defeat summary judgment. The opposing party's burden is to set forth *evidentiary* facts which disclose the existence of a triable, factual issue. (Code Civ. Proc., § 437c, subds. (b) and (d).) Defendant has failed to do so in this case.

■ Nevertheless, defendant asks this court to reverse the summary judgment, contending the trial court erred in continuing, rather than denying, plaintiff's earlier summary judgment motion,[6] in excluding Danell's bankruptcy petition on grounds it was inadmissible hearsay, and in not recognizing that proof of fraudulent intent must necessarily come from inference. None of these contentions are meritorious. First, defendant cannot demonstrate prejudice from the court's decision to continue the summary judgment procedure for two months and to require plaintiff to re-notice, re-file and re-serve moving papers on defendant. Had the court denied the first motion, it could nevertheless have granted the second one. Secondly, in determining that defendant did not raise a triable issue of fact, we *considered* the bankruptcy evidence that defendant claims was erroneously excluded. Even considering it, however, we concluded that the bankruptcy petition failed to demonstrate the transfer was a transfer in fraud of creditors because plaintiff obtained his interest for a reasonably equivalent value to the consideration he gave up. Finally, although we agree that proof of fraudulent intent must often come from inference, here the undisputed evidence demonstrated that Danell received debt forgiveness in an amount in excess of $21,000 which was the approximate fair market value of the interest.

The judgment is affirmed.

Agliano, P. J., and Premo, J., concurred.

---

[6] Plaintiff allegedly failed to separately notice his alternative motion for summary adjudication of issues and to make page and line references to the facts cited in his separate statement of undisputed facts.