[No. H012671. Sixth Dist. Feb. 6, 1996.]

STORY ROAD FLEA MARKET, INC., Plaintiff and Appellant, v.
WELLS FARGO BANK, N.A., Defendant and Respondent.

COUNSEL

Hoffman & Kazubowski and Daniel S. Cornell for Plaintiff and Appellant.

A. David Darman, R. Stewart Baird, Coblentz, Cahen McCabe & Breyer, Jonathan R. Bass and Susan K. Jamison for Defendant and Respondent.

OPINION

MIHARA, J.—Defendant Wells Fargo Bank, N. A. honored more than a hundred forged checks against plaintiff's account. Plaintiff did not discover the forgeries until more than a year after defendant began honoring these checks. Defendant refused to credit plaintiff's account for any of these unauthorized checks, and plaintiff filed suit against defendant. Plaintiff alleged causes of action for negligence, breach of contract and common counts and asserted a cause of action for money damages for defendant's alleged violation of California Uniform Commercial Code section 4406. Defendant's demurrer to plaintiff's negligence, breach of contract and common counts causes of action was sustained without leave to amend on the theory that California Uniform Commercial Code section 4406 displaced all other actions based on these forged checks. Defendant's motion for summary

judgment on the California Uniform Commercial Code section 4406 cause of action was granted after defendant established that its system for reviewing checks was consistent with general banking usage and that it had utilized that system with respect to these checks. On appeal, plaintiff claims that summary judgment was improper because there was a triable issue of fact and the demurrer should not have been sustained since California Uniform Commercial Code section 4406 does not displace all other causes of action. We affirm the judgment.

## BACKGROUND

In 1981 plaintiff established a checking account with defendant. The written agreement between plaintiff and defendant provided that defendant would honor only checks signed by authorized signatories. The authorized signatories on the account were Glen Norris and Suzanne Norris. Plaintiff's then attorney, Kenneth Fehl, was responsible for plaintiff's accounts payable. He delegated this task to Helen Shino, whom he employed as a bookkeeper. Between August 1990 and May 1992, Shino stole more than 100 of plaintiff's checks. Beginning in September 1990, Shino forged the signature of one of the authorized signatories on these checks and used the checks to obtain funds for her own purposes. In all, Shino managed to drain $255,761.60 from plaintiff's checking account without its knowledge. Shino intercepted the bank statements sent to plaintiff by defendant, destroyed them and posted false entries in plaintiff's books to conceal her scheme. Plaintiff discovered Shino's scheme on June 6, 1992, and immediately filed this action. Plaintiff also demanded that defendant credit plaintiff's account for the unauthorized checks defendant had honored. Defendant refused to do so. Plaintiff alleged that defendant's conduct in paying these unauthorized checks was due to "a lack of ordinary care."

Plaintiff's complaint alleged causes of action for negligence, breach of contract and "common counts" and it purported to allege a cause of action based on defendant's breach of its obligations under California Uniform Commercial Code section[1] 4406. Defendant demurred to the complaint by asserting that the negligence, breach of contract and "common counts" causes of action were barred because section 4406 defined plaintiff's exclusive remedy against defendant under these circumstances. The demurrer was sustained without leave to amend. Defendant then brought a motion for summary judgment on the remaining cause of action. Defendant asserted that plaintiff could not succeed on this cause of action because plaintiff had failed to discover and notify defendant of the forgeries promptly after receipt

---

[1]Subsequent statutory references are to the California Uniform Commercial Code unless otherwise specified.

of the bank statement which contained the initial forgeries. The declarations in support of defendant's summary judgment motion established that it had exercised "ordinary care" in honoring the unauthorized checks by processing the checks in accordance with its own check processing procedures, which procedures were "in accord with reasonable commercial standards . . . [and] with general banking practice" in the area.

Plaintiff did not dispute defendant's evidence, and defendant's motion for summary judgment was granted. However, the order granting defendant's motion gave plaintiff 60 days in which to seek reconsideration if it obtained evidence that defendant had failed to exercise "ordinary care" in paying the unauthorized checks. Plaintiff thereafter sought reconsideration and submitted declarations which it claimed established a material dispute of fact regarding whether defendant had exercised "ordinary care." The court found that plaintiff had failed to raise a material triable issue of fact by submitting any proof that defendant had failed to exercise "ordinary care." Plaintiff's motion for reconsideration was denied, and judgment was entered in favor of defendant. Plaintiff filed a timely notice of appeal.

## ANALYSIS

The critical statute at issue in this case is former section 4406. This statute provided as follows. "(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith . . . , the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after the discovery thereof. [¶] (2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subdivision (1) the customer *is precluded from asserting against the bank* [¶] (a) His unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and [¶] (b) An unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration. [¶] (3) The preclusion under subdivision (2) does not apply if the customer establishes *lack of ordinary care* on the part of the bank in paying the item(s)." (Former, § 4406, italics added.)

### A. *Preclusion Applies to All Causes of Action*

The precise meaning of former section 4406 is critical to plaintiff's appellate arguments. Plaintiff claims that the statute would not preclude its

contract and negligence causes of action even if plaintiff failed to establish that defendant's payment of the forged checks involved a lack of ordinary care. We disagree. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. . . . In order to determine this intent, we begin by examining the language of the statute." (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420], citations omitted.) ■ The language of former section 4406 is unambiguous. If a bank customer fails to promptly discover the forgeries and notify the bank, the customer is "precluded from asserting [the forgeries] against the bank" unless the customer establishes that the bank did not use "ordinary care" in honoring the forgeries. This language contains none of the limitations plaintiff imagines.

First, we must cast off the erroneous notion that former section 4406 *defined a cause of action* against the bank which *displaced* all *other* causes of action based on the unauthorized signatures. This is a serious misconstruction of the meaning of the statute. Where the customer has failed to timely notify the bank of an unauthorized signature on an item after receiving the item from the bank with the customer's statement, the customer will be precluded under former section 4406 from founding *any action* on the bank's payment of subsequent items bearing unauthorized signatures by the same wrongdoer unless the customer can show that the bank failed to use "ordinary care" in honoring these subsequent items. If the customer timely notified the bank of the initial unauthorized signature or the bank failed to exercise ordinary care in paying subsequent items, this preclusion does not apply and the customer may allege *any* appropriate cause of action based on the bank's conduct in honoring the items bearing unauthorized signatures. The essence of former section 4406 is a defense for a bank against a customer's action based on unauthorized signatures on checks under certain circumstances.

Each of plaintiff's causes of action against defendant was based on defendant's alleged wrongdoing in honoring forged checks.[2] Under former section 4406, plaintiff could assert the forgeries against defendant as the basis for a legal action only if plaintiff had promptly notified defendant of

---

[2]Although plaintiff alleged in its complaint that defendant had paid some checks "without any signatures whatsoever," it did not assert any cause of action based solely on defendant's conduct in honoring unsigned checks as opposed to checks bearing unauthorized signatures. In response to defendant's summary judgment motion in which defendant asserted that it was undisputed that all of the checks bore unauthorized signatures, plaintiff did not dispute that all of the checks bore unauthorized signatures. Consequently, plaintiff is not permitted to now argue that it had a cause of action based solely on allegedly unsigned checks because it essentially conceded below that there were no unsigned checks.

the initial forgeries or defendant had failed to exercise "ordinary care" in honoring the forged checks. In this case, it was undisputed that plaintiff had not promptly notified defendant of the initial forgeries. The only question was whether defendant had exercised "ordinary care" in honoring the forged checks.[3] As this question was resolved on defendant's motion for summary judgment, the propriety of the demurrer depends on whether the court properly granted summary judgment. If the summary judgment motion properly established, on undisputed facts, that defendant had exercised "ordinary care" in honoring the forged checks, all of plaintiff's causes of action fall to defendant's defense under former section 4406. Since we conclude that the summary judgment motion was properly granted, plaintiff had no viable causes of action.

### B. *Preclusion Applied*

#### 1. *Standard of Review*

The applicability of the preclusion set forth in former section 4406 was established by defendant in its motion for summary judgment. ■ Appellate review of a summary judgment is de novo. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071 [258 Cal.Rptr. 721]; *Barisich* v. *Lewis* (1990) 226 Cal.App.3d 12, 15 [275 Cal.Rptr. 331].) "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor . . . . [¶] [If] a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203], citations omitted.)

#### 2. *Defendant Proved That It Had Used "Ordinary Care"*

Plaintiff alleged that defendant's conduct in paying these unauthorized checks was due to "a lack of ordinary care." ■ In order to establish its

---

[3]It is interesting to note that the common law had established a similar rule prior to the enactment of the California Uniform Commercial Code. If a bank customer failed to notify the bank of forged checks within a reasonable time after receiving the checks back from the bank, the customer was estopped from challenging the bank's conduct in honoring the forged checks so long as the bank exercised "proper care" in processing the checks. (*Basch* v. *Bank of America* (1943) 22 Cal.2d 316, 321-323 [139 P.2d 1].) This rule appears to have been applicable to both contract and tort actions. (*Ibid.*; *Pac. Coast Cheese, Inc.* v. *Sec.-First Nat. Bk.* (1955) 45 Cal.2d 75, 79-80 [286 P.2d 353].)

defense, defendant had to prove that it had used ordinary care in honoring the forged checks. Defendant submitted evidence which showed that the unauthorized checks had been processed by defendant's "automated check processing procedure." This process involved an initial procedure in which certain checks were selected for "individual sight review" based on a set of criteria. None of the unauthorized checks on plaintiff's account were selected for sight review. Nevertheless, defendant established that it had processed the forged checks "in accordance with its own check processing procedures," and that these procedures were "in accord with reasonable commercial standards . . . [and] with general banking practice" in the area.

■ Whether defendant's declarations are sufficient to establish that defendant used "ordinary care" in honoring the forged checks depends on what former section 4406 meant by "ordinary care." Section 4406 did not and does not define "ordinary care," but the California Uniform Commercial Code did and does elsewhere specify the meaning of this term. The California Uniform Commercial Code was revised in 1992. Prior to these revisions, the California Uniform Commercial Code defined how a "prima facie" showing of "ordinary care" could be made by a bank. "[A]ction or nonaction *consistent . . . with a general banking usage . . .* prima facie constitutes the exercise of *ordinary care.*" (Former § 4103, subd. (3), italics added.) "The term 'general banking usage' is not defined [by statute] but should be taken to mean a general usage common to banks in the area concerned." (Com. to former § 4103.) By defining a bank's standard of "ordinary care" in terms of "general banking usage," former section 4103 reflected the Legislature's decision to subject some conduct of banks to a "professional negligence" standard of care which looks at the procedures utilized in the banking industry rather than what a "reasonable person" might have done under the circumstances. (Cf. *Osborn* v. *Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 271-273 [7 Cal.Rptr.2d 101].) The Legislature's decision to utilize a professional standard of care with respect to the conduct of banks was rational because banking is a complicated process which requires special training and skill, and the nature of this process is not a matter of common knowledge. (Cf. *Ibid.*) This standard of care seems even more appropriate when it is noted that, even prior to the enactment of the California Uniform Commercial Code, courts faced with the issue of the propriety of a bank's procedures for detecting unauthorized signatures considered whether the bank's process comported with "the accepted modern practice" of banks in the area. (*Basch* v. *Bank of America, supra,* 22 Cal.2d at p. 330.)

Noting that former section 4103 explained the meaning of "ordinary care" in terms of "general banking usage" prior to the 1992 revision of the

California Uniform Commercial Code, defendant asserts that the Legislature's 1992 addition of a more detailed definition of "ordinary care" to section 3103 was not a "change in law" and therefore governs this case. Plaintiff asserts that the Legislature's 1992 addition of a new definition of "ordinary care" changed the law, and therefore it is not applicable to this case because the checks herein at issue were honored prior to the effective date of this statutory change. "Unless a change in law, as contrasted with a clarification, has clearly been made, this code, as it existed on January 1, 1993, shall be deemed declaratory of the meaning of this code as it existed prior to January 1, 1993." (§ 16104.) " 'Ordinary care' [means] . . . [i]n the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this division or Division 4 (commencing with Section 4101)." (§§ 3103, 4104, subd. (c).)

We agree with defendant that this definition of ordinary care did not "change" the law but merely clarified it, and therefore the definition of "ordinary care" in section 3103 is "declaratory" of the meaning of "ordinary care" in former section 4406. Prior to the 1992 changes, "ordinary care" could be established by a bank by showing that the bank's practices comported with "general banking usage" in the area. (Former § 4103, subd. (3); see § 3103, subd. (a)(7), italics added.) The 1992 addition of a more precise definition of ordinary care clarified this standard by detailing that "reasonable commercial standards do not require the bank to *examine the instrument* if the failure to examine does not violate the bank's prescribed procedures *and the bank's procedures do not vary unreasonably from general banking usage* . . . ." (§ 3103, subd. (a)(7), italics added.) The 1993 definition of "ordinary care" does not vary demonstrably from the pre-1993 definition. Both definitions require a bank to show that its practices comported with general banking usage. The revised definition simply notes that "ordinary care" *can* be established notwithstanding the bank's failure to "examine the instrument" so long as the bank's processing of the instrument was in accordance with *both* the bank's practices *and general banking usage*. This qualification means that a bank cannot establish "ordinary care" unless it can show that its practices comported with "general banking usage." The fact that the pre-1993 definition of "ordinary care" did not expressly mention a duty to "examine the instrument" implies that a bank could then establish "ordinary care" even if the bank had failed to examine the instrument so long as the bank was able to establish that its practices comported with general banking usage.

We can see no "change" in the law in regard to the definition of "ordinary care" in this context. Before the 1992 revision of the California Uniform Commercial Code, a bank could establish that it had processed an instrument in accordance with practices which comported with general banking usage and thereby establish a prima facie case of "ordinary care." The provisions of the California Uniform Commercial Code prior to the 1992 revisions did not prohibit the bank from making such a showing even if it had failed to examine the instrument. The revised provisions of the California Uniform Commercial Code continue to provide that a bank can show that it used "ordinary care" by establishing that it processed an instrument using procedures that were consistent with general banking usage. ■■ Consistent with these requirements, defendant made an adequate showing that the procedures it utilized in dealing with the forged checks comported with "general banking practice" in the area. This showing was sufficient to establish, in the absence of evidence to the contrary, that defendant had used "ordinary care" in processing the checks in question.

### 3. *Plaintiff's Evidence Failed to Raise a Triable Issue*

Once defendant established that it had used "ordinary care," the burden shifted to plaintiff to raise a triable issue of fact as to either whether defendant had followed its own procedures or whether defendant had utilized procedures which were consistent with "general banking practice" in the area. Plaintiff submitted evidence that the signatures on the unauthorized checks "did not bear any reasonable resemblance" to the authorized signatures. It also submitted evidence that the unauthorized checks were "out-of-sequence with respect to the other accounts payable checks . . . ." Plaintiff also submitted evidence which purported to establish that *there is no industry standard* for check processing systems because they are proprietary and each bank keeps its system secret. Because the evidence established that none of the unauthorized checks on plaintiff's account had been sight reviewed and that defendant's check processing system ordinarily detected unauthorized signatures on sight reviewed checks, plaintiff sought to establish that defendant's system for deciding which checks to "out-sort" for sight review was inadequate. Plaintiff's evidence established that (1) there was no specific dollar limit below which the system ignores a particular check, but all checks over $50,000 are sight reviewed, (2) the system is not able to detect unsigned checks, (3) the criteria used by the system for determining whether a check should be "out-sorted" included "location information," the dollar amount of the check and whether the check is "out-of-sequence," (4) a check that is "in-sequence" and under $10,000 will not ordinarily be sight reviewed, (5) a business check payable to an individual which is deposited at

a non-Wells Fargo branch and is out of sequence will not be sight reviewed unless it exceeds $10,000, and (6) checks that are out of sequence *or* over $10,000 may be out-sorted if they meet other criteria. Plaintiff attempted to show that the unauthorized checks at issue herein were "out-of-sequence," but this showing is immaterial because plaintiff's evidence indicated that even an out-of-sequence check which was deposited at a non-Wells Fargo branch and was for less than $10,000 would not be sight reviewed. All of the checks at issue here were deposited at non-Wells Fargo branches, were for less than $10,000 and were not sight reviewed. It is irrelevant whether these checks were "out-of-sequence."

■ Defendant established its entitlement to judgment by showing that the preclusion set forth in former section 4406 applied. None of plaintiff's evidence established any material triable issue of fact with regard to defendant's showing that its check processing system comported with general banking usage in the area. Instead, plaintiff's showing was merely an attempt to show that defendant's system was inadequate because it did not result in sight review of checks like those herein in question. Plaintiff's expert opined that defendant's check processing system was "commercially unreasonable" because it resulted in sight review of only 1 percent of the checks processed and it did not require sight review of all out-of-sequence checks. However, plaintiff's expert did not provide any evidence that defendant's check processing system was inconsistent with the general practice in the banking industry in the area. Plaintiff's evidence failed to controvert defendant's showing.

Plaintiff nevertheless claims that summary judgment was precluded because it was entitled to proceed on its theory that "the procedures followed by a bank are unreasonable, arbitrary or unfair." Plaintiff derives this language from a comment to section 3103, subdivision (a)(7). "The second sentence of subsection (a)(7) is a particular rule limited to the duty of a bank to examine an instrument taken by a bank for processing for collection or payment by automated means. This particular rule applies primarily to Section 4-406 and it is discussed in Comment 4 to that section. Nothing in Section 3-103(a)(7) is intended to prevent a customer from proving that the procedures followed by a bank are unreasonable, arbitrary or unfair." (Com. to § 3103.) Plaintiff apparently believes that this comment *obviates the preclusion* stated in former section 4406 when there is evidence that a bank has used "unreasonable" procedures. We find no such meaning in this comment.

Neither section 4406 nor section 3103 provides that the preclusion set forth in section 4406 is obviated if bank procedures which are consistent

with general banking usage are nevertheless shown to be unfair, unreasonable or arbitrary. The import of the comment to section 3103, subdivision (a)(7) is that, *in an action where the fairness of bank procedures is relevant*, a customer may prove that certain bank practices were unreasonable, unfair or arbitrary, even though those practices were consistent with general banking usage. For instance, a bank customer might bring an action for negligence against a bank which was based on something other than unauthorized signatures on checks. (See *Sun 'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 700 [148 Cal.Rptr. 329, 582 P.2d 920] [customer may bring a negligence action based on "an independent wrong" notwithstanding section 4406].) Such an action could be supported by proof that the bank's procedures were unfair even though they were consistent with general banking usage. The language in question indicates that the professional standard of care, imported into section 4406 by its use of the term "ordinary care," is applicable to bank procedures for processing checks in an action based on unauthorized signatures, but may not be applicable in actions based on independent wrongs by the bank. This comment does not obviate the clear and unambiguous preclusion set forth in section 4406.

Defendant proved that it had a complete defense to all of plaintiff's causes of action. Plaintiff failed to dispute defendant's showing by raising any triable issue of fact. The trial court's judgment must be upheld.

CONCLUSION

The judgment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.