[L. A. No. 3464.   Department Two.—June 5, 1915.]

THE YAMATO (a Corporation), Appellant, v. THE BANK OF SOUTHERN CALIFORNIA (a Corporation), Respondent.

CORPORATIONS—STOCK WRONGFULLY TAKEN BY SECRETARY—PLEDGE FOR PRIVATE LOAN—DEFENSE OF NEGLIGENCE.—Where the secretary of plaintiff corporation wrongfully took from its safe a certificate of its own stock pledged to the corporation as security for a loan to himself, and later pledged it to the defendant bank as security for a personal loan to himself, plaintiff can recover the stock from the pledgee as against a defense that the loss was caused by the negligence of plaintiff in allowing the secretary to have access to its safe and in placing him in a position of confidence upon which the defendant was entitled to rely.

ID.—ESTOPPEL.—No estoppel is created against the plaintiff by reason of the facts that the secretary was a trusted official holding a responsible position with the plaintiff, which was known to the defendant, that he dealt with defendant on behalf of plaintiff in negotiating loans for it, and that the plaintiff did not notify defendant of the loss of the certificate until defendant requested a transfer of the stock, since these circumstances did not induce defendant to alter its situation to its disadvantage after the loan was made.

NEW TRIAL—NOTICE SERVED PRIOR TO ENTRY OF JUDGMENT—ADDITIONAL NOTICE.—A notice of intention to move for a new trial served before entry of judgment is a nullity and a similar notice served within ten days after actual entry of judgment, whether or not the moving party had notice of such entry, is not prejudiced by the previous void notice.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Wm. D. Dehy, Judge presiding.

The facts are stated in the opinion of the court.

Parker & Moote, for Appellant.

Lucien Gray, for Respondent.

HENSHAW, J.—Plaintiff brought this action to recover possession of fifty shares of its capital stock, alleged to be wrongfully in the possession of the defendant. The right of plaintiff's possession, as pleaded, rested in a pledge of the stock by one Inui as security for the payment of his promissory note to the plaintiff in the sum of four thousand one hundred and seventy-five dollars. Inui at that time and thereafter was the secretary of the plaintiff. The defendant asserted the right to possession of the stock as collateral security for a promissory note which Inui made to it some six months after the date when the stock was pledged and delivered to plaintiff. The evidence leaves no doubt over the facts that Inui did give his promissory note to plaintiff as pleaded and secured this note by the pledge of the fifty shares of stock in question. Six months thereafter he executed his promissory note for one thousand eight hundred dollars to defendant and pledged as security the same certificate of fifty shares of stock of plaintiff. Inui was not authorized by plaintiff to take the stock. He had not paid his debt to plain-

tiff.   Plaintiff had not in any way released the pledge and unquestionably the stock was illegally abstracted—in short, stolen—from the plaintiff and pledged with defendant.   To overcome the prior and superior right of plaintiff to the possession of this stock under these circumstances defendant pleaded that plaintiff permitted Inui to retain possession of and access to the certificate of stock after it was pledged with it, "and thereby enabled said Inui to have and take and deliver said certificate of stock to this defendant"; that at the time that defendant made its loan to Inui it had no notice or knowledge of the pledge to plaintiff; that Inui "was the secretary of plaintiff and transacted with this defendant a large amount of business for and on behalf of said plaintiff, and said Inui was at such times one of the managing officers and agents of plaintiff; that at the time of the institution of this suit and for a long time prior thereto, and for some time thereafter, said Inui was dangerously sick and ill and confined to his bed, and later died of said sickness and illness, and affiant has been unable to learn of or find or locate any property or effects of said Inui, other than said certificate of stock; that plaintiff suffered and permitted this defendant to have and continue in the peaceable and undisturbed possession of said certificate of stock from June, 1910, until November, 1911, without in any way asserting its alleged claim thereto or advising this affiant of said alleged claim, and did not assert said alleged claim to or advise this defendant thereof, until after said Inui was dangerously sick and was unable to testify or participate in this controversy; that it was by the negligence and sufferance of plaintiff that the state of facts of which it now complains happened; that plaintiff ought to be and is estopped by its negligence and conduct herein in asserting a claim to said certificate of stock prejudicial to this defendant; that it is specifically provided by section 3543 of the Civil Code of this state that where one of two persons, both innocent, must suffer by the act of a third, he by whose negligence it happens must be the sufferer, and this defendant pleads above acts and said provision of said code in bar of plaintiff's alleged cause of action."   The court found in the precise language of this averment and concluded that it was "by the negligence and sufferance of plaintiff that the state of facts of which it complains happened, and that the plain-

CLXX Cal.—23

tiff is estopped by its acts and conduct from asserting a claim to said certificate of stock pledged to plaintiff bank.''

The findings are here attacked for the insufficiency of the evidence to support them. They are not supported. As has been said, the evidence is abundant to establish the pledge of the stock with the plaintiff. The bank's evidence is that it had come to know Inui as ''the active managing official of the company'' in the matter of attending to the security and the financial matters; that he was the financial representative of the company, even to the extent of borrowing money for the company from the bank. The plea of the bank that it was induced to place reliance and trust upon the representations of Inui because of his position with plaintiff and because plaintiff intrusted him in the management of these delicate and confidential affairs would have great weight if the matter here in controversy in any way grew out of Inui's position, or was within the actual or ostensible powers of his agency. But admittedly in this matter Inui was dealing with the bank in his private personal capacity, and the bank in turn was dealing with him in a like capacity and not at all as the representative of the plaintiff. It would be an extraordinary proposition to hold that a corporation was responsible for the private, personal acts of its officers, wholly independent of any business of the corporation, because the corporation had employed and placed these officers in positions of power and trust. True, such positions of power and trust may give the men who hold them a higher reputation for honesty and integrity than perhaps they would otherwise have, but this is very different indeed from saying that because the corporation employs them in such capacities it is in any way warranting or guaranteeing the honesty and integrity of their independent, personal business transactions, and the transaction in which Inui gave his promissory note and pledged this stock to the defendant was strictly a transaction of that character.

As little foundation is there for a finding of estoppel against the plaintiff. All that appears is that Inui, the trusted secretary, had or obtained access to the safe in which the note with its collateral was deposited. He abstracted this stock and pledged it with the defendant. Plaintiff did not discover this abstraction until some time thereafter. Indeed, the bank, it appeared, held the stock for more than a year

before it carried the first notification to plaintiff of its possession by a demand that it be transferred upon the books of the company; that is to say, it was in January, 1910, that the plaintiff received the stock in pledge; it was in June, 1910, that defendant received it in pledge, and in November, 1911, defendant presented the certificate to plaintiff for transfer, and thereafter plaintiff made its demand upon defendant for possession of the stock.   It is not contended that plaintiff did any affirmative act touching the rights of the defendant by reason of which an estoppel could be raised in the latter's favor. Its acts are said to be acts of negligence.   They are defined as negligence in not keeping possession of the certificate—negligence in permitting Inui, the debtor, to have charge of the certificate—negligence in not getting the certificate indorsed and delivered to it by Inui—negligence in not having its pledge noted on the stub of its stock book—negligence in not discovering the abstraction of the certificate, and, finally, "it was negligent in not being diligent."   But all this amounts to no more than that the plaintiff trusted a man who occupied one of its responsible official positions.   Every corporation and every business firm in the land must do and does the same thing. No business of any magnitude or consequence can be transacted without a trust imposed in somebody, and where a trust must be imposed it is always possible to violate the trust. It was, therefore, not negligence upon the part of the plaintiff that it was possible for Inui, its secretary, to have stolen the pledged stock, and no other of the acts of negligence charged and found against the plaintiff amount to anything.   It does not appear that defendant's position would have been bettered in the slightest if these acts or omissions of plaintiff had not taken place.   It would not have enlightened defendant, for example, if the pledge to plaintiff had been noted on the stub of the stock book.   It would not have advantaged defendant if plaintiff had discovered the theft of the stock the day after it was pledged to defendant, for the injury had then been accomplished.   The defendant was not charged with notice that Inui had pledged it and did not know that he had pledged it until the defendant, in turn, offered it for transfer, and defendant itself waited more than a year before so doing.   (*Janin* v. *London & San Francisco Bank,* 92 Cal. 14, [27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100].)   No evidence whatever was offered from which

even an inference could be drawn that knowledge acquired by the bank at any time after the contract of pledge was completed would have enabled it to have bettered its financial condition in the matter of the Inui loan.

Appellant served and filed its notice of intention to move for a new trial on August 12, 1912. This was prior to the entry of the judgment. Thereafter, on the fourteenth day of August, 1912, the judgment was entered, and upon August 23d appellant served a new notice of intention to move for a new trial. Appellant's first notice of intention filed prior to the entry of the judgment was premature and a nullity. Its second notice of intention, served and filed upon August 23d was within ten days after the entry of the judgment, and therefore from any point of view, whether or not appellant had notice of the entry, was within time. (Code Civ. Proc., sec. 659.) This precise question has not heretofore been passed upon by this court, but has received consideration in Montana under a code section identical with ours, and we are in accord with the views of the Montana court in its construction of the statute. That is to say, the first notice was premature and a nullity, since the judgment had not been entered. (*Power* v. *Turner*, 37 Mont. 521, [97 Pac. 950].) And though formal notice of the entry of the judgment may be waived by the moving party by instituting his proceedings in support of the motion, without such notice, as was here done under the second notice of intention, it will not be held that the mere fact that a premature notice was inadvertently given is a waiver such as will compel the appellant to stand upon the premature notice and forbid him giving a later and proper one. (*McIntyre* v. *MacGinniss*, 41 Mont. 87, [137 Am. St. Rep. 701, 108 Pac. 353].)

The judgment and order appealed from are therefore reversed.

Lorigan, J., and Melvin, J., concurred.