[Civ. No. 34864. Second Dist., Div. Five. Aug. 26, 1970.]

ATLAS VEGETABLE EXCHANGE, INC.,
Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant and Respondent;
UNITED CALIFORNIA BANK, Defendant and Appellant.

## Counsel

Joseph J. Jonesi for Plaintiff and Appellant.

Harris B. Taylor, George J. Brusky, Jr., and Ernest M. Clark, Jr., for Defendant and Respondent and for Defendant and Appellant.

## Opinion

**STEPHENS, Acting P. J.**—Plaintiff, respondent and cross-appellant Atlas Vegetable Exchange (hereinafter Atlas) was engaged in farming, produce distribution, and selling, and was a depositor of defendant and appellant United California Bank (formerly California Bank) (hereinafter UCB) during all of the times involved in this litigation.

Defendant Mary Matsumura was employed by Atlas as an assistant bookkeeper during 1959 and 1960. In its normal course of business, Atlas purchased various items of merchandise and supplies, and issued approxi-

mately 100 checks per week in payment therefor. Mrs. Matsumura was directed to prepare weekly checks to pay all outstanding obligations of Atlas on the bases of statements and invoices received from the company's creditors. After Mrs. Matsumura drew the checks, she submitted them to the persons authorized to sign them for Atlas. The invoices and statements were presented with the checks for review prior to signing.

Between August 27, 1959 and February 4, 1960, Mrs. Matsumura prepared 60 checks, among others, ostensibly drawn in favor of creditors of Atlas, received the signatures of the persons authorized to sign them, but never delivered or sent the checks to the named payees. Instead, Mrs. Matsumura personally endorsed each of the 60 checks in the name of the payee, sometimes by typewriter and sometimes by writing or printing the payee's name, and deposited them in an account in the name of Ruben Rodriguez Enterprises (hereinafter Rodriguez), at the Slauson-Avalon branch of defendant and cross-respondent Bank of America National Trust and Savings Association (hereinafter B of A). Mrs. Matsumura was also the bookkeeper for Rodriguez, and she had authority to draw checks upon the Rodriguez account. She thereafter withdrew the funds represented by the 60 Atlas checks, which totaled $20,210.43, from the B of A account, and used them for her own purposes. None of the named payees received any of this money, and none of them authorized Mrs. Matsumura to endorse the checks.

When the checks were deposited by Mrs. Matsumura in the Rodriguez account, B of A placed its endorsement thereon, guaranteeing all prior endorsements. B of A presented the checks to UCB, and the latter remitted the sum of $20,210.43 to B of A in payment therefor. This amount was charged to Atlas' account at UCB.

When Atlas discovered the foregoing facts, it made immediate demand upon both UCB and B of A for repayment of the sums involved, but neither bank has repaid any of this money. Atlas thereafter filed a lawsuit against UCB, B of A, and Mary Matsumura. The first cause of action sought damages from UCB and Mrs. Matsumura. The second cause of action sought damages from B of A for accepting the checks with the forged endorsements, guaranteeing the endorsements, and presenting the checks to UCB for payment from the Atlas account. The third cause of action charged negligence on the part of B of A in accepting the checks with the forged endorsements.

Mrs. Matsumura was served with summons and complaint; upon failure to answer, her default was taken on October 14, 1960, and judgment for Atlas was subsequently entered against her. UCB filed a cross-complaint against B of A and Mrs. Matsumura, but did not effect service of summons

on Mrs. Matsumura.[1] B of A's demurrer to Atlas' complaint was sustained with leave for Atlas to amend. The parties entered into a stipulation that Atlas would not amend; that judgment would not be entered until after trial; and that neither side waived any rights, including the rights to appeal.

The case was tried before a jury in January of 1963, and a verdict was returned in favor of Atlas and against UCB. Judgment was entered for Atlas and against UCB, and for B of A in Atlas' suit against it, Atlas having failed to amend. UCB's motion for new trial was granted, and Atlas appealed from the order granting the motion for new trial and the judgment in favor of B of A. The Court of Appeal affirmed the order granting a new trial, and held that the issues between Atlas and B of A were subject to retrial. Upon counsel's request to the trial court for clarification of the decision of the Court of Appeal, the trial court held that the original ruling on the demurrer still stood, and that neither party had waived any rights with reference to that ruling.

The case was again tried before a jury in December of 1968. After both sides had presented their cases, each moved for a directed verdict in its favor. The court granted Atlas' motion, and denied UCB's motion. Judgment was subsequently entered in favor of Atlas against UCB, and in favor of B of A in Atlas' suit against it. UCB appeals from the judgment in favor of Atlas, and Atlas appeals from the judgment in favor of B of A.

We first consider the UCB appeal from the judgment in favor of Atlas. UCB raises three contentions on appeal: (1) the trial court erred in denying UCB's motion to read into evidence the deposition of Mary M. Matsumura taken on January 23, 1962; (2) the trial court erred in granting Atlas' motion for a directed verdict as there was substantial evidence in support of the two defenses of UCB; namely, that the checks involved were "bearer" paper, and that the negligence of Atlas was the proximate cause of the damage sustained; (3) the trial court erred in denying UCB's motion for a directed verdict.

We concern ourselves primarily with the second contention, since its determination dictates the result of this appeal. Upon a retrial, the facts presented on the first contention might well make useless any comments we might make relative to the instant record.

 It was error to grant a directed verdict for Atlas, because there was substantial evidence in support of UCB's defense that the negligence

---

[1] Whatever rights UCB may have as against B of A have not been litigated in the actions before us, and we do not concern ourselves with this aspect of the cases.

of Atlas was the proximate cause of the damage sustained.[2] The case of *Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768] sets forth the general rule concerning the power of a court to grant a directed verdict: "It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' (*Newson* v. *Hawley,* 205 Cal. 188 [270 Pac. 364]; *Perera* v. *Panama Pacific Int. Exp. Co.,* 179 Cal. 63 [175 Pac. 454]; *Estate of Sharon,* 179 Cal. 447 [177 Pac. 283]; *Estate of Gallo,* 61 Cal.App. 163, 175 [214 Pac. 496]; 24 Cal.Jur., pp. 912-918.) Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. (*Umsted* v. *Scofield Eng. Const. Co.,* 203 Cal. 224, 228 [263 Pac. 799].)" ■ To preclude direction of a verdict, the opposing inferences must be based on evidence, and not on speculation and conjecture. (*Rufo* v. *N.B.C. Nat. Broadcasting Co.,* 166 Cal.App.2d 714 [334 P.2d 16].)

■ We recognize that while a bank normally is absolutely liable for payment of a forged check, it may justify the payment on principles of estoppel, or on the basis of negligent or misleading conduct of the depositor which directly or proximately caused the bank to pay. (*Basch* v. *Bank of America,* 22 Cal.2d 316, 321 [139 P.2d 1].) ■ UCB contends that there was evidence that Atlas was negligent in that since no markings were placed upon invoices at the time they were presented for payment, there was nothing to prevent a dishonest employee from presenting an invoice more than once to obtain issuance of a check to a creditor who had previously been paid.[3] Apparently, Mrs. Matsumura was able to conceal her dishonesty by obtaining the issuance of more than one check to the same creditor for the same supplies. It was not until one of Atlas' creditors complained that he had not been paid, and identified his

---

[2]Providing the depositions of Mary Matsumura are ultimately admitted, there would also be ample evidence to support the defense that the checks in question were "bearer" paper.

[3]During the cross-examination of Mr. Tsuruta, an officer of Atlas, the following exchange took place: "Q. There was no way to establish whether you were paying the same invoice more than once? A. No."

purported endorsement upon a returned check as a forgery, that Mrs. Matsumura's thefts were uncovered. UCB further argues that Atlas could be found negligent in failing to compare the detailed statements of its commercial account sent to it by UCB each month. These statements showed the date and amount of all checks paid by UCB which were charged to Atlas' account. UCB sent all checks which it had paid and charged to Atlas' account, along with each monthly statement. UCB contends that by comparing the monthly statements with the checks and invoices, Atlas could have discovered Mrs. Matsumura's dishonesty. Prior to August 25, 1960, Atlas never complained to UCB that the latter rendered an incorrect statement of the charges made against its account.[4]

We find that Atlas' practice of issuing checks upon the presentment of invoices by Mrs. Matsumura could be the basis for a jury finding of negligence. We note the following language in *Los Angeles Inv. Co. v. Home Savings Banks,* 180 Cal. 601, 609-610 [182 P. 293, 5 A.L.R. 1193]: ". . . . We are much inclined to the opinion that negligence cannot be reasonably inferred from the probative facts in this case. The company had rather an elaborate system of approving, checking, and entering demands before checks were drawn to pay them. It was, as we have said, very similar to the systems found in other large corporations. Complaint is chiefly made that the company relied upon the honesty of its heads of departments and the regularity on their face of the demands or requisitions which such heads approved, and made no investigation to determine whether such demands were fraudulent or not. But trust must be placed in someone (*Kohn v. Sacramento etc. Co.,* 168 Cal. 1 [141 Pac. 626]; *The Yamato v. Bank of Southern California,* 170 Cal. 351 [149 Pac. 826]), and necessarily in heads of departments. If trusting them in regard to demands for checks for disbursements regular upon their face is negligence, so it would be negligence to trust them in a hundred other ways in which it is within their power to defraud their employer. Business could not be conducted on any such basis. It is impossible for any large concern to investigate minutely in advance every demand for disbursement necessary for it to make in its daily business. The delay and expense of so doing would be too great.

"But however this may be, even if the company were guilty of negligence in signing the checks upon the fraudulent demands of Emory, it is plain that such negligence did not contribute to or induce the acceptance by the banks of the forged endorsements. The forgery of the endorsements was entirely distinct from the issuance of the checks on false demands, and there was no relation between them. This is clearly shown

---

[4] In fact, the deposition of Mary Matsumura discloses that she was the one responsible for the reconciliation of the account.

by the fact that Emory could just as easily have forged endorsements on and secured the payment of checks issued on genuine demands, and in fact did so in one instance." Nevertheless, we feel the instant case is distinguishable. Atlas was finally alerted to Mrs. Matsumura's conduct when an unpaid creditor complained. If Atlas had taken the simple expedient, as UCB suggests, of stamping the invoices "paid" upon the issuance of a check, thus preventing the duplicate issuance of checks to the company's creditors, Mrs. Matsumura could not have been successful in using a check for her own purposes. The complaints of the unpaid creditors would have immediately alerted Atlas to what was taking place in its bookkeeping department.

A jury could have also concluded that Atlas was negligent in not comparing its returned checks with the invoices upon which those checks were supposedly issued. ▋ As the court stated in *Basch* v. *Bank of America, supra,* 22 Cal.2d 316, 322-326: "The weight of authority, and perhaps of reason, supports the view that when a depositor's pass-book has been written up and returned to him with cancelled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time, and if they disclose forgeries or alterations to report them to the bank, failing in which he cannot, if his failure results in detriment to the bank, dispute the correctness of payments thereafter made by it on similar checks. (7 C.J. 687; *California Vegetable Union* v. *Crocker Nat. Bank,* 37 Cal.App. 743 [174 P. 920]; *Morgan* v. *United States Mortgage & Trust Co.,* 208 N.Y. 218 [Ann.Cas. 1914D, 462, L.R.A. 1915D, 741, 101 N.E. 871].)

". . . . . . . . . . . . . . .

". . . . [P]laintiff . . . as a depositor had a legal duty, according to the authorities cited in the forepart of this opinion, to examine *within a reasonable time* the documentary evidence forwarded to him by the bank as indicative of the status of his account and to report without delay any discrepancies revealed upon comparison with his own records. Obviously, if plaintiff had performed that duty of verification in regard to the conduct of his banking business, he would have easily detected the forgeries, and the exposure of the first or any of the succeeding ones would have avoided a repetition." ▋ While Atlas did begin to investigate when its profits started to drop, there is no evidence that the returned checks were compared with the invoices prior to the time a creditor notified its officers of one of the forged endorsements.

▋ The bank must show due diligence before it can assert such a defense, and if in the exercise of due care the bank would have detected

the forgeries without the aid of the depositor, it cannot escape liability merely because the depositor was also at fault. ■ However, the question of whether a bank has been negligent in paying a fraudulently endorsed check is generally one for the jury. (*Basch* v. *Bank of America, supra,* 22 Cal.2d 316, 323.)

■ Since there was enough evidence on the defense of UCB to permit the case to go to the jury, the judgment in favor of Atlas against UCB must be reversed. By the same token, however, the evidence is not so one sided as to warrant a directed verdict in favor of UCB.

■ We now consider the appeal of Atlas from the judgment entered in favor of B of A upon the sustaining of its demurrer to Atlas' complaint. Atlas claims a direct right of action against B of A based upon (1) the latter's guarantee of all prior endorsements, and (2) negligence. The case of *Allied Concord Financial Corp.* v. *Bank of America,* 275 Cal.App.2d 1, 3-4 [80 Cal.Rptr. 622] involved a similar factual situation. The court expressly recognized that prior to the adoption of the Uniform Commercial Code, a drawer had no direct rights against a collecting bank which honored a check with a forged endorsement, but held that a different rule applied under the new law: "Can Allied as the drawer of a check which has been charged to its account under a forged endorsement directly sue depositary and collecting banks which have warranted the validity of the endorsement? Under former California law a drawer had no right of direct action against a collecting bank for losses resulting from a charge made against his account on a forged endorsement. (*California Mill Supply Corp.* v. *Bank of America,* 36 Cal.2d 334 [223 P.2d 849]; *Metropolitan Life Ins. Co.* v. *San Francisco Bank,* 58 Cal.App.2d 528 [136 P.2d 853].) However, the enactment of the Uniform Commercial Code provides an opportunity to consider the matter afresh.

"The modern trend of procedure looks on circuity of action with disfavor. Privity of contract is no longer a bar to suit. (*Peterson* v. *Lamb Rubber Co.,* 54 Cal.2d 339, 341-348 [5 Cal.Rptr. 863, 353 P.2d 575]; *Stewart* v. *Cox,* 55 Cal.2d 857 [13 Cal.Rptr. 521, 362 P.2d 345]; cf. *Heyer* v. *Flaig,* 70 Cal.2d 223, 227-228 [74 Cal.Rptr. 225, 449 P.2d 161].) Likewise the right of third-party beneficiaries to directly enforce promises made and obligations assumed for their benefit has been extensively recognized, both substantively and procedurally. (*Connor* v. *Great Western Sav. & Loan Assn.,* 69 Cal.2d 850, 864-866 [73 Cal.Rptr. 369, 447 P.2d 609]; *Lucas* v. *Hamm,* 56 Cal.2d 583, 589-591 [15 Cal.Rptr. 821, 364 P.2d 685]; *Johnson* v. *Holmes Tuttle Lincoln-Mercury, Inc.,* 160 Cal.

App.2d 290 [325 P.2d 193]; *Watson* v. *Aced,* 156 Cal.App.2d 87 [319 P.2d 83].)" The instant action is controlled by the law in effect prior to the adoption of the Uniform Commercial Code.

The judgment in favor of Atlas is reversed. The judgment in favor of B of A is affirmed.

Aiso, J., and Reppy, J., concurred.

A petition for a rehearing was denied September 21, 1970.